904 F.2d 867
 58 USLW 2728, 14 O.S.H. Cas.(BNA) 1615,
1990 O.S.H.D. (CCH) P 28,966
 Elizabeth DOLE, Secretary of Labor, United States Department of Labor
v.
TRINITY INDUSTRIES, INC., Tank Lining and Repair Car
Company, and Central Maintenance, Inc., and their
successors.
Appeal of U.S. SECRETARY OF LABOR.
 No. 89-3625.
 United States Court of Appeals,
Third Circuit.
 Argued April 3, 1990.
Decided June 7, 1990.
 
 John R. Shortall (argued), Robert P. Davis, Sol. of Labor, New York City, Cynthia L. Attwood, Associate Sol., Arlington, Va., for Occupational Safety and Health.
 Ann Rosenthal, for Appellate Litigation, U.S. Dept. of Labor, Washington, D.C., for appellant.
 Robert E. Rader, Jr. (argued), A. Darby Dickerson, Locke Purnell Rain Harrell, Dallas, Tex., Marvin A. Fein, Baskin Flaherty Elliott & Mannino, Pittsburgh, Pa., for appellees.
 Before HIGGINBOTHAM, Chief Judge, and COWEN and NYGAARD, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Chief Judge.
 
 
 1
 This case comes to us as an appeal from a final order of the district court granting limited enforcement of administrative subpoenas duces tecum issued by the Secretary of Labor under the Occupational Safety and Health Act, 29 U.S.C. Secs. 651-78 (1982). The subpoenas ordered Trinity Industries, Inc. and two of its subsidiaries to produce occupational health and safety records that they are required by law to keep. The Secretary, who brought the case in district court when the companies refused to comply with the subpoenas, claims on appeal that the district court used an incorrect legal standard in granting only limited enforcement. We agree.
 
 I.
 
 2
 On February 10, 1989, the Occupational Safety and Health Administration ("OSHA") received a formal written complaint from an employee at the Butler workplace where Trinity Industries, Inc. ("Trinity") repairs railroad cars. Specifically, the employee alleged that "[n]o hard hats and safety glasses [were] provided for non-production employees when walking through the shop work areas." Appendix ("App.") at 10. Under section 8(f) of the Act, 29 U.S.C. Sec. 657(f)[1], such a complaint can, and in this case did, trigger an inspection of the conditions described. OSHA obtained a warrant under 29 U.S.C. Sec. 657(a)[2], which authorized an inspection of the plant limited to the conditions described in the employee complaint. The warrant also authorized "the inspection (and copying if it is deemed necessary by the inspecting Compliance Officer) of records required to be maintained by 29 U.S.C. 657(a) and 29 CFR Part 1904 and 1910, with the exception of [employee medical records]."[3] App. at 20; Appellant's Brief at 10.
 
 
 3
 Trinity did not honor the warrant. Trinity now claims that it "was willing" to allow a plant inspection limited to the conditions described in the employee complaint and a review of records of injuries that may have resulted from those specific conditions, but it would not permit a more extensive review of its records. Appellees' Brief at 3. The Secretary, on the other hand, contends that Trinity would permit neither the limited inspection of the workplace nor the examination of any records. On March 21, 1989, OSHA issued an administrative citation to Trinity for having refused to produce the records and proposed a penalty of $3000.
 
 
 4
 At the same time that it issued the citation, OSHA served an administrative subpoena duces tecum on Trinity and identical subpoenas on two of its subsidiaries, Tank Lining and Rail Car Co. and Central Maintenance Co. The subpoenas, which were authorized under 29 U.S.C. Sec. 657(b)[4], requested of all three companies much of the same information requested of Trinity by the warrant, and some additional information.[5] In her petition filed in district court to enforce the subpoenas, the Secretary explained that the information was needed to determine whether the scope of the inspection should be enlarged. OSHA's internal instruction handbook requires that OSHA expand the scope of a workplace inspection conducted pursuant to an employee's formal complaint if the employer meets a specified criterion. The inspector is instructed to calculate the company's lost workday incidence ("LWDI"), and if that rate is at or above the Bureau of Labor Statistics' lowest average national rate for manufacturing over the past five years, then the scope of the inspection is to be expanded beyond the conditions listed in the employee complaint to a general inspection of the workplace.
 
 
 5
 On March 27, 1989, Trinity filed a notice with the Occupational Safety and Health Review Commission ("Review Commission") contesting the citation and proposed penalty that had resulted from its failure to honor the warrant.[6] Several days later, on March 30, counsel for Trinity and its subsidiaries notified OSHA that they would not comply with the subpoenas. The Secretary then filed a petition in district court to enforce the subpoenas. The district court ordered enforcement limited to those records that relate to the workplace conditions described in the complaint, and the Secretary appealed, claiming that full enforcement should have been ordered.
 
 II.
 
 6
 We have jurisdiction to review a final order of the district court under 28 U.S.C. Sec. 1291 (1982 & Supp. V 1987). The district court assumed jurisdiction, pursuant to 28 U.S.C. Sec. 1331 (1982), over a question of federal law under the Act. We have jurisdiction, indeed we have an obligation, to review the district court's assumption of jurisdiction. "An appellate court must satisfy itself not only of its own jurisdiction, but also of the jurisdiction of the courts under review." Pomper v. Thompson, 836 F.2d 131, 132 (3d Cir.1987) (citing Mitchell v. Maurer, 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338 (1934)). Our standard of review in this matter is plenary. York Bank and Trust v. Federal Savings and Loan Ins. Corp., 851 F.2d 637 (3d Cir.1988); Medical Fund-Philadelphia Geriatric Center v. Heckler, 804 F.2d 33, 36 (3d Cir.1986).
 
 
 7
 Trinity and its two subsidiaries ("Trinity et al."), raise an issue of jurisdiction on appeal, and we shall consider this threshold question first. Their argument is based on their claim that "[t]he exact issue raised in the Secretary's appellate brief is presently pending before the Occupational Safety and Health Review Commission," namely, the scope of records inspection authorized under the Act in response to an employee's complaint. Appellee's Motion to Dismiss at 1. They contend that, once the administrative review process to decide this question has been set in motion by the Secretary's contempt citation and Trinity's contesting of the citation, the process must be completed before the district court has jurisdiction to review the case. They make the novel argument that, under the Act, not only employers but also the Secretary of Labor must exhaust administrative remedies before presenting the question in district court; they contend that her failure to do so creates a jurisdictional defect. Therefore, they conclude, the district court lacked jurisdiction to consider the question, and this court lacks jurisdiction to hear the appeal, since at the time the case was filed the question was still pending before the Review Commission.
 
 
 8
 We disagree with Trinity's contention that the primary issue in the two proceedings is the same. Because of that, we do not reach the question whether the Secretary was required to exhaust administrative remedies before approaching the district court, nor do we consider whether her failure to do so was jurisdictional. The question before the administrative law judge was one of the proper scope of the inspection of an employer's records under a warrant issued pursuant to 29 U.S.C. Sec. 657(a) in response to an employee complaint. The question before the district court was one of the proper scope of the inspection of an employer's records under an administrative subpoena issued pursuant to 29 U.S.C. Sec. 657(b) in response to an employee complaint. Trinity et al. conflate these two questions. Their approach assumes that under the Act the two instruments, the warrant and the administrative subpoena, are the same with respect to their authority to require the production of records in response to an employee complaint. Under the law of this circuit, this is clearly not so. In the Matter of Kulp Foundry, Inc., 691 F.2d 1125 (3d Cir.1982).
 
 
 9
 In Kulp Foundry, a case very similar to this one, we held that, under the Act, the Secretary could require the production of the employer's records but only by subpoena and not by warrant. Id. at 1132. In response to a formal written employee complaint alleging that employees were exposed to "high levels of dust," OSHA applied for a warrant to inspect "all pertinent conditions, structures, machines, apparatus, devices, equipment, materials and all other things therein (including records, files, papers, processes, controls and facilities) bearing on whether this employer is complying with the Occupational Safety and Health standard for exposure to silica." Id. at 1127. Kulp failed to honor the warrant and the district court held the company in contempt for refusing to allow the inspection of the workplace; however, the court quashed and severed as overly broad that portion of the warrant which authorized the Secretary to inspect documents at the plant. The district court held that the only statutory authority for the inspection of documents under the Act was the Secretary's administrative subpoena power under section 8(b) of the Act, 29 U.S.C. Sec. 657(b). Id. at 1131. This court affirmed the district court's order, holding that the Secretary was without statutory authority to inspect documents pursuant to a search warrant issued under Sec. 657(a). We said:
 
 
 10
 Our reading of the statutory provisions, the legislative history, and the various policies behind the Act convinces us that Congress did not intend to allow the Secretary to inspect records pursuant to a warrant issued under section 8(a). Congress clearly distinguished inspections of an employer's physical plant from the examination of records and documents.... We conclude ... that Congress intended the safeguards of a subpoena requirement to apply to the production of documents.
 
 
 11
 Id. at 1132 (footnote omitted).
 
 
 12
 Because, under the law of this circuit, subpoenas and search warrants differ in their power to require the production of records in response to an employee complaint, the question that was before the Review Commission is different from the question that was before the district court and is before us on appeal. The issue of exhaustion of administrative remedies therefore does not arise in this case. The district court had jurisdiction to hear the case and we have jurisdiction to hear the appeal.
 
 III.
 
 13
 We now turn to the substantive issue raised by the Secretary on appeal: whether the district court erred in limiting enforcement of the administrative subpoenas to those records related to the conditions described in the employee complaint.
 
 
 14
 The requirements for the enforcement of an administrative subpoena duces tecum were set forth by the United States Supreme Court in U.S. v. Morton Salt Co., 338 U.S. 632, 652, 70 S.Ct. 357, 368-69, 94 L.Ed. 401 (1950) and restated by this court in U.S. v. Westinghouse Electric Corp., 638 F.2d 570, 574 (3d Cir.1980). They are as follows: "(1) the inquiry must be within the authority of the agency, (2) the demand for production must not be too indefinite, and (3) the information sought must be reasonably relevant to the authorized inquiry." Westinghouse Electric, 638 F.2d at 574.
 
 
 15
 In the hearing on a rule to show cause why a petition to enforce the subpoenas should not be issued, the district court found that the government had met the first two of these requirements: the type of inquiry was within the authority of the agency and the demand for production was not too indefinite. However, it found that the government had failed to meet the third requirement. The following colloquy on this point occurred between the court and counsel for the Secretary at the hearing:
 
 
 16
 THE COURT: The most important [requirement], however, is the third in this case, and that is that the information is reasonably relevant to the authorized inquiry.
 
 
 17
 . . . . .
 
 
 18
 ... [Y]ou had an employee who made a complaint; ... that there weren't hard hats and goggles for employees walking through the work area? Now, you should have gotten a warrant under 8F; then you would be entitled to subpoena information that is relevant to that complaint. I don't care what you have in your procedure manual. You can put anything you want in your procedure manual, ... but you don't have the authority to get that.
 
 
 19
 MS. GWYNN: Well, Your Honor, our position is that we are entitled to subpoena this information whether we have a complaint or not. We are--
 
 
 20
 THE COURT: Well, I don't agree with that position.
 
 
 21
 MS. GWYNN: We are entitled to obtain information about health and safety records at a work site.
 
 
 22
 THE COURT: I don't agree....
 
 
 23
 App. at 99-101.
 
 
 24
 The court held that the Secretary was entitled to subpoena only those records that related to the employee complaint. It did not accept as legitimate OSHA's procedure of investigating an employer's overall health and safety record by calculating the LWDI whenever it conducted an inspection in response to an employee complaint.
 
 
 25
 We believe that some confusion may have resulted in this case from the fact that OSHA was undertaking two separate inquiries. The first was an inspection of the workplace, limited to the conditions described in the employee complaint. The second was a general review of the employer's health and safety records to see whether its LWDI called for a broader inspection of the workplace. The complaint inspection triggered the second, more general inquiry. The records that the Secretary subpoenaed were reasonably relevant to the second inquiry but not to the first.
 
 
 26
 The difference between the positions of the Secretary and the district court, as reflected in the colloquy, is in their interpretations of the third requirement listed in Westinghouse Electric, that the information sought must be "reasonably relevant to the authorized inquiry." Westinghouse Electric, 638 F.2d at 574. Does it mean, as the district court seemed to think, that the information must be reasonably relevant to a particular authorized inquiry, in this case the investigation of an employee complaint? Or does it mean merely that the information must be relevant to some (any) inquiry that the Secretary is authorized to undertake? We hold that the latter is the correct interpretation.
 
 
 27
 The Supreme Court, in Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943), held that where the Secretary of Labor sought enforcement of administrative subpoenas, and the information sought by the subpoena "was not plainly incompetent or irrelevant to any lawful purpose of the Secretary ..., it was the duty of the district court to order its production...." Id. at 509, 63 S.Ct. at 343 (emphasis added). It is well established that, "[w]hen investigative ... duties are delegated by statute to an administrative body, it ... may take steps to inform itself as to whether there is probable violation of the law." Morton Salt, 338 U.S. at 643, 70 S.Ct. at 364. The court explained at some length the investigative power of administrative agencies:
 
 
 28
 The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.
 
 
 29
 Id. at 642-43, 70 S.Ct. at 364.
 
 
 30
 The Secretary is authorized under Sec. 657(a) of the Act to review the safety and health records of employers, and she is authorized under Sec. 657(b) to subpoena the records if they are not otherwise forthcoming. The remaining question is whether she may undertake such general reviews in response to employee complaints.
 
 
 31
 In their brief and at oral argument, Trinity et al. claimed that the Secretary's motive in seeking to subpoena the documents was improper. They characterized the Secretary's efforts to obtain the documents by subpoena as an illegitimate attempt to do "indirectly" what she could do not "directly" and as an "end run" around the restrictions of the warrant. We fail to understand this characterization of requests for documents under an administrative subpoena. Under the rule of Kulp, it appears that the Secretary was in error in requesting any documents by warrant. That certainly did not mean that she was in error in requesting documents by subpoena. In fact, the direct and proper way for her to obtain the documents she sought was by administrative subpoena.
 
 
 32
 Furthermore, we find that OSHA's policy of reviewing an employer's records to determine its LWDI in response to an employee complaint of unsafe conditions is entirely appropriate. Appellees do not dispute that OSHA is entitled to subpoena the documents in question in order to calculate an employer's overall safety record when this action is not in response to an employee complaint, but they would have us hold that it cannot subpoena them following an employee complaint. Given that the primary purpose of the Act is to protect employees from death and injury due to unsafe working conditions, see Atlas Roofing Co. v. OSHRC, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977), we can find no basis for Trinity's position. An employee complaint is just the sort of thing that would reasonably cause OSHA to "take steps to inform itself as to whether there is probable violation of the law" beyond the conditions cited in the complaint. Morton Salt, 338 U.S. at 643, 70 S.Ct. at 364.
 
 
 33
 In arguing that the district court's decision should be upheld, Trinity et al. seem to equate the Secretary's action in requiring production of the records with a "wall to wall" inspection of the workplace. Requiring that an employer produce for the Secretary's inspection records that by law he must keep for her use is hardly equivalent to undertaking a comprehensive plant inspection; requiring the production of the documents does not even, by itself, trigger such an inspection. It is the employer's own safety record that would do that, and then only if, after inspecting the documents, the Secretary determined that the employer's safety record fell below a certain level. If Trinity did not consent to a broader inspection of the workplace, the Secretary would have to obtain a warrant.
 
 
 34
 Trinity et al. cite numerous cases in support of their position that the district court's decision should be upheld, but none of them is on point. Some of these cases required that the scope of the physical plant inspection in response to an employee complaint be limited to the conditions described in the complaint. Marshall v. North American Car Co., 626 F.2d 320 (3d Cir.1980); Donovan v. Sarasota Concrete Co., 693 F.2d 1061 (11th Cir.1982); West Point-Pepperell, Inc. v. Donovan, 689 F.2d 950 (11th Cir.1982). Others held that a non-consensual inspection of an employer's records without either a warrant or a subpoena violated the employer's 4th Amendment privacy interest in his records. Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); McLaughlin v. King's Island, Division of Taft Broadcasting Co., 849 F.2d 990 (6th Cir.1988); Brock v. Emerson Electric Co., Electronic & Space Division, 834 F.2d 994 (11th Cir.1987). Still others approved a records inspection or imposed limitations on records sought under a warrant following an employee's complaint, but did not address the question of records sought by subpoena. Donovan v. Burlington Northern, Inc., 694 F.2d 1213 (9th Cir.1982); Donovan v. Fall River Foundry Co. Inc., 712 F.2d 1103 (7th Cir.1983); Marshall v. W & W Steel Co., Inc., 604 F.2d 1322 (10th Cir.1979). None of these cases addresses the proper scope of employee records that may be subpoenaed in an investigation triggered by an employee complaint.
 
 
 35
 We hold that the district court erred in limiting enforcement of the administrative subpoenas duces tecum issued against Trinity et al. The subpoenas fulfilled all of the requirements set out in Morton Salt and Kulp. These subpoenas were issued in connection with a limited workplace inspection following an employee complaint, but the information they seek does not have to be relevant to that particular inquiry in order to justify full enforcement. It is enough that the information sought is relevant to any inquiry that the Secretary is authorized by law to undertake. She is authorized to review the occupational health and safety records that employers are required to keep by the Act for her use, and the fact that she chooses to do so following an employee complaint does not diminish her power to subpoena the records that she requires.
 
 IV.
 
 36
 For the foregoing reasons, we will vacate the judgment of the district court and remand to the district court for full enforcement of the subpoenas duces tecum.
 
 
 
 [1]
 Title 29 U.S.C. Sec. 657(f) reads, in pertinent part:
 (1) Any employees or representative of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger.... If upon receipt of such notification the Secretary determines there are reasonable grounds to believe that such violation or danger exists, he shall make a special inspection in accordance with the provisions of this section as soon as practicable, to determine if such violation or danger exists....
 
 
 [2]
 Title 29 U.S.C. Sec. 657(a) reads, in pertinent part:
 In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized--
 (1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and
 (2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.
 
 
 [3]
 The warrant authorized inspection of a log and summary of occupational injuries and illnesses and an annual summary of such injuries and illnesses. Title 29 C.F.R. Sec. 1904.7 (1989) requires each employer to make available accident and injury records for inspection and copying by the Secretary
 
 
 [4]
 Section 657(b) reads, in pertinent part:
 In making his inspections and investigations under this chapter the Secretary may require the attendance and testimony of witnesses and the production of evidence under oath.... In case of a contumacy, failure, or refusal of any person to obey such an order, any district court of the United States or the United States courts of any territory or possession, within the jurisdiction of which such person is found, or resides or transacts business, upon the application by the Secretary, shall have jurisdiction to issue to such person an order requiring such person to appear to produce evidence if, as, and when so ordered, and to give testimony relating to the matter under investigation or in question, and any failure to obey such order of the court may be punished by said court as a contempt thereof.
 29 U.S.C. Sec. 657(b).
 
 
 [5]
 The subpoenas requested the following information for the years 1987 through 1989, inclusive:
 
 
 [1]
 Any and all documents, books, and/or records containing information regarding the number of employees and the number of hours worked by said employees ..., including but not limited to time cards, time card summaries, payroll records, Occupational Safety and Health Administration Form OSHA 200-s, and/or employee lists or rosters
 
 
 [2]
 Any and all documents, books, and/or records containing information regarding the amount of lost employee worktime due to injury or illness ..., including but not limited to logs and/or summaries of employee injuries, illness, or fatalities, worker's compensation records and reports, and/or sick leave records
 
 
 [3]
 Any and all Employer's First Reports of Occupational Injury for each lost time injury
 
 
 [4]
 Any and all Occupational Safety and Health Administration Forms 101 and 200
 App. at 15-20.
 
 
 [6]
 Since this appeal was filed, an administrative law judge ruled that in response to the warrant issued under 29 U.S.C. 657(a), Trinity was required to produce only those records related to the employee complaint. Secretary of Labor v. Trinity Industries, Inc., Occupational Safety and Health Review Commission Case No. 89-1158, typescript at 7. (OSHRC Feb. 22, 1990)